## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| DEBORAH BENTON, as Personal | : | | |
| Representative of the Estate of Jerry Benton, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 21-cv-1575 (RC) |
| | : | | |
| v. | : | Re Document No.: | 6 |
| | : | | |
| WASHINGTON METROPOLITAN AREA | : | | |
| TRANSIT AUTHORITY, | : | | |
| | : | | |
| Defendant. | : | | |

## <u>MEMORANDUM OPINION</u>

### GRANTING DEFENDANT'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

Plaintiff Deborah Benton brought this action in the D.C. Superior Court against

Defendant Washington Metropolitan Area Transit Authority ("WMATA") to recover retirement

benefits allegedly owed to her as a beneficiary of her deceased husband's retirement plan ("the

Plan").  WMATA removed and filed a motion to dismiss and/or for summary judgment under

Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56.  For the reasons discussed below,

WMATA's motion to dismiss is granted on all claims.

## II.  BACKGROUND[1]

Plaintiff's husband, Jerry Benton, now deceased, worked for WMATA as a bus driver

from around April 1982 to June 2011.  *See* Compl. ¶¶ 4, 6, ECF No. 7 at 13.  As a WMATA

---

[1] The relevant background is drawn from Plaintiff's allegations in her complaint.  *See United States v. Philip Morris Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000) ("At the motion to dismiss stage, the only relevant factual allegations are the plaintiffs', and they must be presumed to be true." (internal quotation marks omitted)).

employee and member of the Local 689 Amalgamated Transit Union, Mr. Benton was eligible

for retirement benefits governed by The Transit Employee's Retirement Plan.  *Id.*; *see* John Decl.

Ex. 1 ("Plan"), ECF No. 6-2 at 3–49.[2]  During his employment, Mr. Benton elected to receive

benefits monthly from the date of his retirement until the date of his death, at which time his

benefits would pass to his spouse, Plaintiff.  Compl. ¶ 6, ECF No. 7 at 13.  Plaintiff alleges she is

owed her husband's benefits, now amounting to over $580,000, and that WMATA has refused to

pay them.  *Id.* at 13–14.  Plaintiff also alleges WMATA has "refused to provide any reasonable

offer to resolve [her husband's] claim."  *Id.* at 14.

Plaintiff brought this action against WMATA in the D.C. Superior Court on December

28, 2020.  *Id.* at 12.  Plaintiff alleges theories of breach of contract, bad faith, and punitive

damages.  *Id.*  On June 9, 2021, WMATA removed to this Court.  Notice of Removal at 1, ECF

No. 1.  On June 11, 2021, WMATA filed a motion to dismiss and/or for summary judgment on

---

[2] The Plan is implicitly referenced by Plaintiff in her complaint and may therefore be considered by the Court on a motion to dismiss.  *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) ("A district court may consider a document that a complaint specifically references without converting the motion into one for summary judgment.  The prototypical incorporation by reference occurs where a complaint claims breach of contract, and either party attaches to its pleading an authentic copy of the contract itself." (citations omitted)); *see also Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (considering pension plan documents that defendant attached to motion to dismiss "because they were incorporated through reference to the plaintiff's rights under the plans, and they are central to plaintiff's claims"), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Scott v. Dist. Hosp. Partners, L.P.*, 60 F. Supp. 3d 156, 161 (D.D.C. 2014) (The court may "'consider documents attached to or incorporated by the complaint in deciding a Rule 12(b)(6) motion without converting the motion into one for summary judgment' including documents referenced or cited to in a complaint.") (citations omitted).  Though the Plan is attached by WMATA, Plaintiff nowhere disputes its authenticity and the complaint necessarily relies on the retirement plan.  *See* Opp'n at 6 ("The Plan documents . . . apply to this retirement proceed[ing]."); *Deppner v. Spectrum Health Care Res.*, 325 F. Supp. 3d 176, 182 n.4 (D.D.C. 2018) ("[T]he court may consider a document supplied by defendant in a motion to dismiss if 'the complaint necessarily relies' on the document and when . . . there is no genuine dispute that the document is what 'its proponent claims.'") (quoting *George v. Bank of America N.A.*, 821 F. Supp. 2d 299, 301 n.5 (D.D.C. 2011)).

all claims, arguing 1) WMATA possesses sovereign immunity from claims for punitive

damages; 2) WMATA is not a proper party under the Plan; and 3) WMATA merely sponsors the

Plan and is therefore not liable.  Def.'s Mem. of L. Supp. Mot. Dismiss ("Mem.") at 1, ECF No.

6-1.  Plaintiff filed an opposition on June 30, 2021.  Pl.'s Opp'n to Def.'s Mot. to Dismiss or

Summ. J. ("Opp'n"), ECF No. 8.  On July 6, 2021, WMATA filed a reply.  Def.'s Reply Supp.

Mot. to Dismiss Pl.'s Compl. and/or Summ. J. ("Reply"), ECF No. 9.

### III.  LEGAL STANDARD

#### A.  Motion to Dismiss

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain

statement of the claim" in order to give the defendant fair notice of the claim and the grounds

upon which it rests.  Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus,* 551 U.S. 89, 93 (2007)

(per curiam).  A motion to dismiss under Rule 12(b)(6) tests whether a plaintiff has properly

stated a claim without deciding the merits of that claim.  *See Scheuer v. Rhodes*, 416 U.S. 232,

236 (1974).  A court considering such a motion presumes that the complaint's factual allegations

are true and construes them liberally in the plaintiff's favor.  *See, e.g.*, *United States v. Philip*

*Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient

factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This

means that a plaintiff's factual allegations "must be enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)."  *Bell Atl. Corp.*, 550 U.S. at 555–56 (citations omitted).  "Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," are therefore

insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not

accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the

legal conclusions that are couched as factual allegations. *See Twombly*, 550 U.S. at 555.

In suits against governments and their instrumentalities, "[i]f sovereign immunity has not

been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter

jurisdiction." *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 200 (D.D.C. 2013)

(citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in

nature.")). Courts "may not find a waiver unless Congress' intent is 'unequivocally expressed'

in the relevant statute." *Hubbard v. Adm'r, EPA*, 982 F.2d 531, 532 (D.C. Cir. 1992)

(quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980)).

## B. Summary Judgment

A party is entitled to summary judgment only if it "shows that there is

no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the

litigation, and genuine disputes about material facts exist when the evidence would allow a

reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). A court assessing a summary judgment motion must avoid credibility

determinations and draw all inferences in the nonmovant's favor. *Id.* at 255. But conclusory

assertions without any evidentiary support do not establish a genuine issue for trial. *See Greene

v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## IV.  ANALYSIS

WMATA makes three arguments in support of its motion to dismiss: 1) WMATA

possesses sovereign immunity from claims for punitive damages; 2) WMATA is not a proper

party under the plain language of the Plan; and 3) WMATA merely sponsors the Plan and is therefore not liable for payment of benefits.  For the reasons discussed below, the Court agrees that WMATA is immune from punitive damages and that WMATA cannot be sued to enforce the Plan.  But it is unnecessary to decide whether WMATA's status as a plan sponsor also limits WMATA's liability because the line of cases cited for that position are inapplicable to government retirement plans such as this.  Finally, while the Court does not find that WMATA is immune from bad faith claims under the Plan, Plaintiff has failed to allege sufficient facts to support this claim.

### A.  Jurisdiction to Award Punitive Damages

WMATA argues this Court lacks jurisdiction to award punitive damages because WMATA's sovereign immunity bars such claims.  Mem. at 5.  Plaintiff does not contest this argument, but instead argues that if the Court lacks jurisdiction it must remand the case.  Opp'n at 7.

It is well-settled law in the District that WMATA is immune from punitive damages. "Article II . . . of the WMATA Compact provides that WMATA is a governmental unit and instrumentality of the Compact signatories (Virginia, Maryland and the District)."[3]  *Lucero-Nelson v. WMATA*, 1 F. Supp. 2d 1, 10 (D.D.C. 1998) (citing *Teart v. WMATA*, 686 F. Supp. 12, 13 (D.D.C. 1988)).  "Congress and the individual signatories have conferred the same Eleventh Amendment sovereign immunity that each individual signatory enjoys."  *Id.*; *accord WMATA v. Barksdale-Showell*, 965 A.2d 16, 20 (D.C. 2009) ("The Compact confers upon the Transit Authority the sovereign immunity enjoyed by the signatories."); *see also Cutchin v. District of Columbia*, 174 F. Supp. 3d 427, 431 (D.D.C. 2016); *Wainwright v. WMATA*, 958 F. Supp. 6, 9

---

[3] *See* D.C. Code § 9-1107.01 (WMATA Compact).

(D.D.C. 1997) ("[T]here can be no serious doubt that WMATA is a governmental agency, and given the structure of WMATA, punishing it would simply mean punishing its innocent riders or the citizens of the signatory governments which pay taxes to support Metro.").

For government instrumentalities like WMATA, "[sovereign] immunity applies except where expressly waived by statute[,] . . . [b]ut 'there is no express waiver of immunity for punitive damages in the WMATA Compact and we will not imply one, given the settled state of District of Columbia law.'" *Lucero-Nelson*, 1 F. Supp. 2d at 10–11 (cleaned up); *see also id.* (collecting cases). The current version of the WMATA Compact waives immunity for contracts and certain torts, but there is no express mention of punitive damages. *See* D.C. Code § 9-1107.01, Art. XVI, No. 81.

As the foregoing authorities illustrate, WMATA is not subject to punitive damages. The question remains whether this Court must still remand. The Court sees no reason to do so.

It is true that "[w]hen a court lacks subject-matter jurisdiction, it must remand the case to the proper forum." *Gebretsadike v. Travelers Home and Marine Ins. Co.*, 103 F. Supp. 3d 78, 82 (citing *Republic of Venezuela v. Philip Morris, Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002) (citing 28 U.S.C. § 1447(c))). It is also true that "[s]overeign immunity is jurisdictional." *In re Al Fayed*, 91 F. Supp. 2d 137, 138 (D.D.C. 2000) (citing *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). However, the two jurisdictional issues are not to be conflated; "[s]overeign immunity is . . . a threshold issue that can be addressed separately from subject-matter jurisdiction, and can be addressed 'even where subject matter jurisdiction is uncertain.'" *Id.* (quoting *Galvan v. Fed. Prison Indus., Inc.*, 199 F.3d 461, 463 (D.D.C 1999)); *see also Kemper v. U.S. Dep't of Educ.*, 285 F. Supp. 3d 145, 148 (D.D.C. 2018) (dismissing claim barred by sovereign immunity);

*Galvan*, 199 F.3d at 463 ("Sovereign immunity questions clearly belong among the non-merits decisions that courts may address even where subject matter jurisdiction is uncertain.").[4]

Indeed, state sovereign immunity applies in both federal courts and the courts of the States. *See Alden v. Maine*, 527 U.S. 706, 713 (1999) ("[T]he States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today . . . ."). In other words, even if this Court were to remand the case, WMATA's immunity would still bar Plaintiff's claim for punitive damages. Because WMATA's sovereign immunity does not abrogate this Court's subject-matter jurisdiction, the Court does not remand the case and instead dismisses Plaintiff's claim for punitive damages.

## B. Breach of Contract

WMATA argues that it is not a proper defendant for Plaintiff's breach of contract claim based on the plain language of the Plan. Mem. at 3–4. WMATA further argues that it is not liable because it is merely the plan sponsor and "does not have decision-making authority over whether to distribute plan benefits." *Id*. at 4. Plaintiff does not dispute WMATA's reading of the Plan or that WMATA does not administer the Plan, Opp'n at 2–3, but argues that WMATA is a proper party nonetheless because WMATA "is directly related [to] and involved in the Plan,"

---

[4] Though Plaintiff does not appear to argue this Court lacks subject-matter jurisdiction, the Court has a responsibility to confirm that it has such jurisdiction. *Byrum v. Winter*, 783 F. Supp. 2d 117, 125 (D.D.C. 2011) ("[I]t is this court's responsibility to consider subject matter [jurisdiction] even if the parties fail to raise the issue.") (quoting *Ctr. for Nuclear Responsibility, Inc. v. U.S. Nuclear Regul. Comm'n*, 781 F.2d 935, 944 (D.C. Cir. 1986)). Congress conferred on federal district courts subject-matter jurisdiction over "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The WMATA Compact grants the U.S. District Courts "original jurisdiction" over "all actions brought by or against [WMATA]." D.C. Code § 9-1107.01, Art. XVI, No. 81; *see also Best v. WMATA*, 822 F.2d 1198, 1199 n.1 (D.C. Cir. 1987). Thus, this Court has subject-matter jurisdiction over this case.

funds the Plan, "is directly responsible for the retirement payment analysis, which determines the payment," and transmits certain documents used to administer the Plan, *id*. at 3–4.

"To prevail on a breach of contract pursuant to District of Columbia law, a party must establish 1) a valid contract between the parties; 2) an obligation or duty arising out of the contract; 3) a breach of that duty; and 4) damages caused by the breach." *Dean v. Walker*, 876 F. Supp. 2d 10, 13 (D.D.C. 2012) (citing *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)). "Every breach of contract gives the injured party a right to damages against the party in breach, unless the contract is not enforceable against that party . . . ." *PHCDC1, LLC v. Evans & Joyce Willoughby Tr.*, 257 A.3d 1039, 1045 (D.C. 2021) (quoting Restatement (Second) of Contracts § 346 cmt. a (Am. L. Inst. 1981)).

WMATA's first argument is that Plaintiff lacks an enforceable claim against it because the plain language of the Plan limits WMATA's liability for claims arising out of the Plan. Mem. at 3–4. "A contract's 'proper interpretation, including whether or not it is ambiguous,' is a question of law . . . ." *MobilizeGreen, Inc. v. Cmty. Found. for the Capital Region*, 267 A.3d 1019, 1026 (D.C. 2022) (quoting *District of Columbia v. Young*, 39 A.3d 36, 40 (D.C. 2012)). "[W]e examine the document on its face, giving the language used its plain meaning." *Id*. (quoting *Dyer v. Bilaal*, 983 A.2d 349, 355 (D.C. 2009) (internal quotation marks omitted)). "The 'written language' of the agreement 'will govern the rights and liabilities of the parties' unless it is ambiguous or inoperative." *Id*. (citing *Abdelrhman v. Ackerman*, 76 A.3d 883, 888 (D.C. 2013)).

Here, the Plan's limitation on WMATA's liability is unambiguous. Section 15.05 of the Plan states,

> Any person having a right or claim under the Plan shall look solely to the assets of the Fund. Neither the Authority [defined as WMATA, *see* Plan at 5] nor the

> Union . . . shall be liable to any person on account of any claim arising by reason of the provisions of the Plan or of any instrument or instruments implementing its provisions.

Plan at 48.  Plaintiff does not dispute WMATA's reading that this section limits WMATA's liability.  And Plaintiff's claim to her husband's retirement benefits appears to be a "claim arising by reason of the provisions of the Plan."  *Id*.; *see* Plan at 9 (defining "Retirement Allowance" as "the benefit for which a Participant becomes eligible pursuant to Article V" of the Plan); *see id*. at 5 (defining "Allowance" as "Retirement Allowance, Disability Allowance or Survivor Allowance payable under the Plan").  Therefore, by the plain language of the Plan, WMATA cannot be liable for Plaintiff's claim for breach of contract under the Plan and therefore is not a proper defendant.[5]

For the foregoing reasons, the Court holds that WMATA is not a proper defendant. Plaintiff's claim for breach of contract against WMATA is dismissed.

### C.  Bad Faith

Plaintiff's remaining claim is that WMATA "has refused to pay or even tender any reasonable amount of retirement benefits" and has therefore "acted in bad faith."  Compl. ¶¶ 13–16, ECF No. 7 at 15–16.  WMATA appears to argue that this claim is barred for the same reason as the breach of contract claim—because WMATA is not a proper party.  Mem. at 3–4.  Plaintiff does not appear to address this argument specifically in her opposition.

---

[5] It is not necessary to address WMATA's argument that it is not liable as merely a plan sponsor because the plain meaning of the Plan unambiguously states that WMATA is not a proper party here.  Moreover, the cases WMATA cites for this argument concern the Employee Retirement Income Security Act ("ERISA").  *See* Mem. at 4; Reply at 5.  WMATA retirement plans, however, do not appear to be governed by ERISA.  *See Sharma v. WMATA*, 58 F. Supp. 3d 59, 63 (D.D.C. 2014) ("Courts in this circuit and in the Fourth Circuit have held that the WMATA Retirement Plan is exempt from ERISA."); *Akins v. WMATA*, 729 F. Supp. 903, 905 n.1 (D.D.C. 1990) (acknowledging concession that "WMATA is a governmental entity and therefore exempt from the applicable ERISA provisions").

"Every contract includes an implied covenant of good faith and fair dealing." *Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013) (citing *Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006)). "To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege either bad faith or conduct that is arbitrary and capricious." *Id.* (citing *Alden v. Georgetown Univ.*, 734 A.2d 1103, 1112 n.11 (D.C. 1999)). "Bad faith requires more than mere negligence; examples include lack of diligence, purposeful failure to perform, and interference with the other party's ability to perform." *Id.* (citing *Allworth*, 890 A.2d at 202).

It is not clear that Section 15.05 of the Plan limits WMATA's liability for the purposes of a bad faith claim. "In the District of Columbia, every contract includes an *implied* covenant of good faith and fair dealing." *Chambers v. NASA Fed. Credit Union*, 222 F. Supp. 3d 1, 13 (D.D.C. 2016) (emphasis added) (citing *Allworth*, 890 A.2d at 201). But the Plan's limitation on WMATA's liability—Section 15.05—seems to apply only to "any claim arising by reason of the provisions of the Plan." Plan at 48. Because the duty to act in good faith is implied, rather than a written provision in the Plan, it is not immediately clear whether a bad faith claim would be considered a "claim arising by reason of the provisions of the Plan." Section 15.05 says nothing specific about limiting WMATA's liability for bad faith claims, and WMATA hardly explains why it should; WMATA's entire argument premised on Section 15.05 is a single, conclusory sentence. *See* Mem. at 4. Therefore, the Court cannot say at this time that WMATA is an improper party for Plaintiff's bad faith claim by the operation of Section 15.05 alone.

Nonetheless, the Court holds that Plaintiff's complaint fails to state a claim for bad faith based on WMATA's alternative argument that "WMATA is a plan sponsor [and] lacks any discretionary decision-making authority over distribution of benefits," making it "not a proper party to this action." Mem. at 4. Indeed, under the terms of the Plan, "the applicable Allowance

shall be paid . . . *by the Trustee* from the Fund."[6]   Plan at 26 (emphasis added).   Thus, it appears

that WMATA had neither the obligation nor even the ability to pay Plaintiff the benefits she

requests.   Though Plaintiff requests the opportunity to conduct discovery, Plaintiff fails to

explain how the documents sought could obligate WMATA, as opposed to the Trustee, to pay

out the benefits.[7]   Because Plaintiff's bad faith claim relies solely on WMATA's failure to pay

benefits—a job for which WMATA was not responsible—the Court cannot see how Plaintiff

could plausibly recover from WMATA.   *See Iqbal*, 556 U.S. at 678 ("A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged.").   Thus, under the set of facts

currently alleged, Plaintiff fails to state a claim for bad faith against WMATA, and that claim is

therefore dismissed.

---

[6] WMATA cites a declaration from a WMATA benefits specialist as support for its argument that it lacks discretionary decision-making authority over distribution of benefits. *See* Mem. at 4 (citing John Decl. ¶ 6).   The Court declines to consider this document because the terms of the Plan itself, which the Court may consider on a motion to dismiss as discussed above, are straightforward and Plaintiff does not dispute the Plan's authenticity or applicability to the case, as discussed further below.   Therefore, it is only necessary to resolve WMATA's motion to dismiss on this ground.   *See Deppner*, 325 F. Supp. 3d at 182 n.4.

[7] Plaintiff argues that "[t]here are real questions of the correct documents in this case," Opp'n at 7, but does not state that the Plan is one of those documents or that the Plan otherwise does not apply.   Plaintiff wishes to "obtain the retirement Plan documents that were signed by Jerry" in discovery, Opp'n at 7, but does not give any reason to believe that the Plan attached by WMATA is not genuine.   In fact, Plaintiff concedes that the Plan governs this case and implies, at least obliquely, that the Plan attached by WMATA is genuine.   *See* Opp'n at 6 ("The Plan documents and D.C. law apply to this retirement proceed[ing]."); Opp'n at 3 ("[WMATA] seeks dismissal based upon the written terms of the retirement Plan."); *id.* ("The Plan documents make it clear that Metro maintains the retirement Plan.").

## V.  CONCLUSION

For the foregoing reasons, WMATA's Motion to Dismiss and/or for Summary Judgment (ECF No. 6) is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 28, 2022                                    RUDOLPH CONTRERAS
                                                          United States District Judge